UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JAMES RICHARD TEAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00146-HBG |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 21].  Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 22] and Defendant's Motion for Summary

Judgment [Doc. 26].  James R. Teamer ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner").  For the following reasons, the Court will **DENY** Plaintiff's motion and **GRANT**

the Commissioner's motion.

I.      **PROCEDURAL HISTORY**

On August 21, 2017, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that

began on May 16, 2016.  [Tr. 87, 161-64].  After his application was denied initially and upon

reconsideration, Plaintiff requested a hearing before an ALJ.  [Tr. 118].  A hearing was held on

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

July 25, 2019. [Tr. 43-74]. On August 13, 2019, the ALJ found that Plaintiff was not disabled.

[Tr. 26-42]. The Appeals Council denied Plaintiff's request for review on May 12, 2020 [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 7, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2. The claimant has not engaged in substantial gainful activity since May 16, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: right knee dysfunction and diabetes with neuropathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently push and/or pull with the lower right extremity; he can frequently climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can frequently balance and stoop; he can occasionally kneel, crouch, and crawl; he should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

2

7. The claimant was born on August 10, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2016, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 31-38].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

3

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

4

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his

5

limitations.  §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff contends first that the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to properly consider the opinions of Dr. Reagan Parr, Dr. Stephen Burke, and Dr. Robert A. Blaine, respectively.  [Doc. 23 at 9].  Plaintiff also contends that evidence submitted to the Appeals Council that was not previously considered is new and material and that there is good cause for not submitting it prior to the ALJ's decision.  [*Id.* at 15]. Plaintiff claims that there would have been a reasonable probability that a different disability determination would have resulted had the evidence been available and considered by the ALJ. [*See id.*].  Plaintiff requests for the final decision of the Commissioner to be reversed and an award be entered in this case and alternatively, requests that the case be remanded for further proceedings and proper adjudication.  Both issues raised by Plaintiff will be addressed in turn.

### 1.    ALJ's Consideration of Treating and Examining Opinions

Plaintiff first argues that the ALJ did not properly consider treating source opinions from Drs. Parr, Burke, and Blaine and that those opinions are supported by the overall record.  [*Id.* at 11].  Plaintiff contends that those opinions are consistent with each other—in that they all opine to limitations at no greater than a reduced range of light exertion—and are consistent with the record in general and that the ALJ failed to provide substantial evidence supporting the rejection of these

opinions in making his determination that Plaintiff was suited for medium exertional work with certain limitations.  [*Id.*].

      1.  <u>Legal Standard</u>

Since Plaintiff's claim was filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence apply to this claim.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources."  20 C.F.R. § 404.1520c(a).  The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5).  However, supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

**(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered

7

all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021).

Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

When two or more medical opinions about the same issue are both equally well-supported

and consistent with the record, but are not exactly the same, the ALJ is required to "articulate how [he/she] considered the other most persuasive factors" of relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(b)(3).

### 2. Medical Opinions

Plaintiff contends that the "ALJ did not properly consider the treating source opinions" in making the disability decision. [Doc. 23 at 11]. As will be detailed below, the ALJ determined that Plaintiff retained the RFC to perform work at a medium exertional level with some additional limitations. [Tr. 36]. Plaintiff challenges the ALJ's reasoning for finding the opinions of Drs. Parr, Burke, and Blaine to be unpersuasive and inconsistent with the record of evidence.

At the outset, the treating physician rule is not applicable in Plaintiff's case, as the ALJ was instead tasked with considering the persuasiveness of the medical opinions. Under the SSA's revised regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Here, due to the lack of extensive case law or Sixth Circuit guidance on the updated regulations, the Court largely focuses on the regulatory language. In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and requires the ALJ to address these two factors in evaluating medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more

9

persuasive the medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2).

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021). However, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Here, the Court finds that the ALJ appropriately considered the supportability and consistency factors of 20 C.F.R. § 404.1520c(c)(2) in reviewing the medical opinions of record. Even though the ALJ found that Plaintiff had some functional limitations stemming from his physical impairments, the records in their entirety are not consistent with Plaintiff's claims of disabling limitations. In making his determination, the ALJ appropriately considered numerous factors including the disputed opinion evidence, minimal objective findings, evidence of minimal and conservative treatment plans, Plaintiff's activity level including work activity and ability to exercise and walk long distances, and evidence of noncompliance with diabetes management and other aspects of medical treatment. [Tr. 34-36]. The record supports the Commissioner's argument that the ALJ's determination that Plaintiff retained the RFC to perform medium work with certain limitations was appropriate and supported under the circumstances.

### i. *Dr. Parr*

Plaintiff saw Dr. Parr, an orthopedic specialist on August 11, 2016. [Tr. 978]. Dr. Parr provided limitations of no lifting/carrying/pulling more than 20 pounds and no climbing or uneven

10

heights. [Tr. 1002]. Dr. Parr later provided that "[Plaintiff] probably should not be around heavy equipment, machinery, or do any heavy lifting, carrying, or pulling for fear of dropping, falling, or doing something similar" and "[Plaintiff's] limitations were spelled out in his return to work note, which is basically for light duty." [Tr. 256]. Plaintiff argues that Dr. Parr's opinion may be more persuasive because he is both a treating physician and a specialist and his opinion is otherwise consistent with the opinions of Drs. Burke and Blaine. [Doc. 23 at 12].

Plaintiff asserts that the ALJ wrongfully discredited Dr. Parr's opinion for being based on Plaintiff's subjective complaints due to the unknown etiology of Plaintiff's knee infirmity. [*Id.*] Plaintiff iterates that despite the unknown etiology, Dr. Parr diagnosed Plaintiff with "monoplegia of the lower limb affecting right dominant side[.]" [*Id.* (citing Tr. 256)]. Plaintiff argues that Dr. Parr is a treating specialist and, as such, would base his opinion both on Plaintiff's subjective complaints as well as his own expertise, examinations, and test findings. [Doc. 23 at 12]. Plaintiff also takes issue with the ALJ's finding that Dr. Parr's limitations appeared to be "transient"—i.e., temporary. [*Id.* (citing Tr. 36)]. Plaintiff asserts that the record fails to support the ALJ's finding that Dr. Parr's limitations were to be temporary even though Dr. Parr referred to the condition itself as being transient, presumably because of Plaintiff reporting that his knee episodes went in and out and were not a consistent issue. [*Id.*]. Plaintiff claims that the record does not support a finding that the limitations were meant to be temporary even if the knee episodes were themselves believed to be temporary.

The Commissioner notes that the ALJ expressly considered Dr. Parr's opinion that Plaintiff could only perform light work and that the ALJ's subsequent finding that Dr. Parr's opinion was unpersuasive is supported for several reasons. [Doc. 27 at 15 (citing Tr. 36)]. The Commissioner also provides that even though the ALJ is not required to consider whether a source is a specialist

11

pursuant to 20 CFR § 404.1520c(b)-(c), the ALJ still noted that Dr. Parr was, in fact, an orthopedic specialist. [*Id.* (citing Tr. 36)]. The Commissioner explains that, in any case, the ALJ "specifically found that Dr. Parr's opinion was not persuasive because it was offered shortly after the initial episode of Plaintiff's knee 'giving way,' it appeared to be based on Plaintiff's subjective complaints as the etiology of the episodes was unknown, and because there was no evidence to suggest that Dr. Parr intended these restrictions to be permanent." [*Id.* at 15-16 (citing Tr. 36)].

The Commissioner argues that Plaintiff saw Dr. Parr only three times and that all three appointments were within the first six months of the relevant period. [*Id.* at 16 (citing Tr. 34-36, 254-56, 975-80)]. The Commissioner states that all of Dr. Parr's interactions with the Plaintiff—including the designating of limitations on his ability—took place early in the relevant period and "that the record reflects minimal additional reports of knee problems after November 2016." [*See id.* at 16-17]. In particular, the Commissioner points to the ALJ's consideration that Plaintiff told Dr. Parr he was able to walk several miles a day and was able to mow his one-acre lawn with a push mower and that during interactions, Plaintiff reported to his primary care physician, Dr. Burke, that his knee episodes were becoming less frequent or did not mention knee issues at all. [*Id.* at 16-17]. The Commissioner thus argues that the ALJ properly considered Dr. Parr's opinion and found that it was unpersuasive because it was not supported by or consistent with the other evidence of record.

The ALJ treated Dr. Parr as a specialist and a treating source with an opinion consistent to those of Drs. Burke and Blaine. [Tr. 36, 1002]. The Commissioner detailed many factors that led to the ALJ deciding that Dr. Parr's opinion was unpersuasive. This included that Dr. Parr's opinion was offered shortly after Plaintiff's initial episodes of his knee giving way and appeared to be based on Plaintiff's subjective complaints because of the unknown etiology of the knee issue. In

12

addition, Plaintiff's argument that the limitations imposed by Dr. Parr were meant to be more than temporary even though he believed the knee issue was "transient" is unsupported. [Tr. 34-36, 254-56, 975-80]. The ALJ also considered Plaintiff's reporting to Dr. Parr that he was able to walk several miles a day and was able to mow his one-acre lawn with a push mower and that during interactions, Plaintiff reported to his primary care physician, Dr. Burke, that his knee episodes were becoming less frequent or did not mention knee issues at all. [Tr. 34-36, 979, 977]. The Court thus agrees with the Commissioner that the ALJ properly considered Dr. Parr's opinion and found that it was unpersuasive because it was not supported by or consistent with the other evidence of record. Even considering that the ALJ treated Dr. Parr as a "specialist," the ALJ was still justified in finding that Dr. Parr's opinion was inconsistent with the weight of the record. Further, as mentioned above, supportability and consistency are the most important factors that ALJs must consider when determining how persuasive a particular medical opinion is as compared to the other evidence. *See* 20 C.F.R. §§ 404.1520(c)(b)(2).

## ii. *Dr. Burke*

Plaintiff provides that on December 2, 2016, Dr. Burke stated, "[Plaintiff] is cleared to return to work 12/3/2016 as advised by Dr. Parr, his orthopedist with light duty restrictions as recommended[,]" that, "[Plaintiff] has an apt with Dr. Dew coming up and was released to desk work part-time by Dr. Parr (per pt) but work refused to honor that note unless I wrote a similar one[,]" followed by "done." [Doc. 23 at 13 (citing Tr. 310)]. Plaintiff stresses that even though these statements were based, in part, on the opinions of Dr. Parr, Dr. Burke is "clearly" agreeing with the restriction of light work. [*Id.* (citing Tr. 310)].

Plaintiff asserts that Dr. Burke's opinion went unaddressed by the ALJ. [*Id.* (citing Tr. 36)]. Plaintiff states that Dr. Burke's opinion is consistent with other opinions, that Dr. Burke is

13

Plaintiff's primary care provider, and he has an extended treating relationship with and has performed multiple examinations on Plaintiff. (*Id.* (citing 20 CFR § 404.1520c(c) as containing these additional factors for ALJs to consider). Plaintiff argues that the ALJ failed to properly consider Dr. Burke's opinion in the disability determination.

The Commissioner argues that the ALJ did not err because Dr. Burke was merely repeating Dr. Parr's opinion to get Plaintiff's employer to allow him to return to work. [Doc. 27 at 17 (citing Tr. 310 (". . . work refused to honor [Dr. Parr's] note unless I wrote a similar one")]. The Commissioner goes on to point out Dr. Burke's statement that Plaintiff was "cleared to return to work 12/3/2016 *as advised by Dr. Parr*, his orthopedist with light duty restrictions as recommended." (emphasis added by Commissioner) [Tr. 310]. The Commissioner states that the ALJ did expressly evaluate *Dr. Parr's* opinion and explained why he found it to be unpersuasive. [Doc. 27 at 18 (citing Tr. 36)].

Plaintiff asserts that Dr. Burke's opinion went unaddressed by the ALJ. [Doc. 23 (citing Tr. 36)]. Plaintiff states that Dr. Burke's opinion is consistent with other opinions, that Dr. Burke is Plaintiff's primary care provider, and he has an extended treating relationship with and has performed multiple examinations on Plaintiff. [*Id.*]. Yet, Plaintiff argues that the ALJ failed to properly consider Dr. Burke's opinion in the disability determination.

The Commissioner argues, and the Court agrees, that the ALJ did not err because Dr. Burke was merely repeating Dr. Parr's opinion. [Doc. 27 at 17 (citing Tr. 310 (". . . work refused to honor [Dr. Parr's] note unless I wrote a similar one")]. The Commissioner points out Dr. Burke's statement that Plaintiff was "cleared to return to work 12/3/2016 *as advised by Dr. Parr*, his orthopedist with light duty restrictions as recommended." (emphasis added by Commissioner) [Tr. 310]. The Commissioner correctly states that the ALJ did *expressly* evaluate Dr. Parr's opinion—

14

which, again, appears to have just been repeated by Dr. Burke—and explained why he found it to be unpersuasive in light of the other evidence of record. [Doc. 27 at 18 (citing Tr. 36)]. The Commissioner asserts that the ALJ's evaluation of Dr. Parr's opinion is very clear in that he did not find that the evidence supported a limitation to light exertional activity. The Court agrees and finds that that conclusion is consistent with the ALJ's decision.

The Commissioner also argues that, in any case, the ALJ found that the evidence of record did not support more than a limitation to a range of medium exertional work, but that should not matter. That is because the vocational expert present at the hearing indicated that even if the individual was further limited to *light* work there would still be sufficient available work in significant numbers in the national economy for such an individual. [*Id.* (citing Tr. 71)]. Thus, even if the ALJ erred by not expressly referring to Dr. Burke's, this was harmless error at most. This is because there were jobs available even if Dr. Burke's opinion would have been enough to justify a finding of light exertional work. "Accordingly, if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" S*ee, e.g.*, *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654–55 (6th Cir. 2009) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983).

### iii. *Dr. Blaine*

Finally, Plaintiff argues that the ALJ also failed to properly consider Dr. Blaine's opinion when making the disability determination. Plaintiff provides that he visited Dr. Blaine's office for a physical consultative examination on November 29, 2017. [Doc. 23 at 13 (citing Tr. 429-32)]. Following the examination, Dr. Blaine diagnosed Plaintiff with bilateral knee pain secondary to degenerative disease; back pain, posttraumatic secondary to disc disease; type II diabetes;

15

obstructive sleep apnea; among other things. [*Id.* (citing Tr. 431-32)]. Dr. Blaine opined as follows: "Plaintiff retaining the ability to stand or walk for four hours in an eight-hour day; could lift 10 pounds frequently; and could lift 30 pounds infrequently. [*Id.* (citing Tr. 432)].

Plaintiff takes issue with the ALJ discrediting the limitations listed by Dr. Blaine on account of the ALJ finding that Dr. Blaine's opinion was "largely based on the claimant's objective reports, as it was otherwise incongruent to his examination and inconsistent with the other evidence." [*Id.* at 14 (citing Tr. 36)]. Plaintiff stresses that Dr. Blaine's examination documented several abnormal findings supporting limiting Plaintiff to a reduced range of light exertional work; that Dr. Blaine's opinion is consistent with those of Drs. Parr and Burke; and that Dr. Blaine is an examining source, suggesting that he may have a better understanding of Plaintiff's impairments pursuant to 20 CFR § 404.1520c(c)(3)(v). [*Id.*].

The Commissioner argues against Plaintiff's assertion that "[i]f reports were truly objective, they would provide valid support for Dr. Blaine's opinion" in response to the ALJ's decision to discredit Dr. Blaine's opinion; this is because it was based on Plaintiff's "objective reports" and was otherwise inconsistent with the record. [Doc. 27 at 18; Tr. 36]. The Commissioner claims that it was clearly a mere "typographical error and that the ALJ intended to state that Dr. Blaine improperly relied on Plaintiff's *subjective* reports." [*Id.* (emphasis added)]. The Commissioner elaborates, stating that the ALJ's true reason for finding Dr. Blaine's opinion to be less persuasive was because it was based on subjective reports that were inconsistent with Dr. Blaine's own objective findings, and his opinion was otherwise inconsistent with the evidence of record. [*Id.* at 19 (citing Tr. 36)]. The Court finds the Commissioner's argument to be logical as Dr. Blaine's objective observations do not correlate to Plaintiff's interpretation of Dr. Blaine's opinion.

16

Dr. Blaine's examination notes included that the Plaintiff was pleasant, well kempt, does not use any assistive device, and was able to get up from his chair and on to the examining table without difficulty. [Tr. 431]. Additionally, Dr. Blaine found that Plaintiff was able to move around without difficulty, he walked with a normal gait, and single leg stand was "normal." [*Id.*]. Plaintiff had some limitation or range of motion and the straight leg raise testing did lead to some knee pain, but Plaintiff had no hip or back pain on either side. [*Id.*]. The Commissioner points out that the ALJ did not find these limitations to be supportive of "such a significant reduction in exertional ability." [Doc. 27 at 19 (citing Tr. 36)].

The Commissioner points to other instances supporting the ALJ's decision to discredit Dr. Blaine's opinion for being inconsistent with the other evidence. This included Dr. Parr's examinations showing little in the way of objective findings and diagnostic testing revealing no orthopedic or neurological abnormalities [Tr. 34-36, 254-56, 975-80], Plaintiff's reporting to Dr. Parr that he could walk several miles a day and mow his one-acre lawn with a push mower [Tr. 34, 977, 979], Dr. Burke's examinations showing Plaintiff was consistently not in acute distress, he walked with a normal gait [Tr. 276-77, 287, 300, 309, 324, 333, 341, 1015, 1030, 1035], excluding one exception when Plaintiff was experiencing diabetic foot pain.

The Commissioner also references the state agency assessments that were considered by the ALJ for the disability decision. [Doc. 27 at 19 (citing Tr. 36, 82-84, 97-99). Drs. Gulbenk and Burge each reviewed the evidence of record and found that Plaintiff retained the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently, sit about six hours in an eight-hour workday, and stand or walk about six hours in an eight-hour workday. [*Id.* at 20 citing (Tr. 82, 97-98)]. They also found that Plaintiff's ability to push or pull with the right leg was limited to frequent [Tr. 83, 98], he had additional postural limitations of never climbing ladders, ropes, or

17

scaffolds, and only occasionally kneeling, crouching, or crawling [Tr. 83, 98], and he could frequently climb ramps and stairs, balance, and stoop, and could occasionally kneel, crouch, or crawl. [Tr. 83]. The Commissioner provides that the ALJ is not bound by any findings made by state agency physicians, but such doctors are highly qualified doctors who are also experts in Social Security disability evaluations, and the ALJ is required to consider their findings. [*Id.* (citing 20 CFR § 404.1513a(b)(1). "State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)).

For the above reasons, the Court finds that the ALJ appropriately evaluated the medical opinions presented to him and made determinations on each opinion's persuasiveness based on the record of evidence as a whole and the consistency factor. Thus, Plaintiff's argument based on the ALJ's treatment of medical opinions in making the disability determination does not give the Court cause for remand.

### B. Supplemental Evidence Submitted to the Appeals Council

Plaintiff also contends that the evidence submitted to the Appeals Council that was not previously considered is new and material and that there is good cause for not submitting it prior to the ALJ's decision. [Doc. 23 at 15]. Plaintiff also argues that there would have been a reasonable probability that a different disability determination would have resulted had the evidence been available and considered by the ALJ. [*See id.*].

On August 12, 2019, Dr. Burke wrote a letter stating, "James R. Teamer is unable to work a sedentary job due to needing to change positions too frequently due to chronic pain." [Tr. 13]. In the May 12, 2020, Notice of Appeals Council Action, the Appeals Council did not exhibit this

opinion. [Tr. 2]. The Appeals Council stated, "You submitted additional evidence from HMG Primary Care at Sapling Grove dated February 5, 2019 through August 12, 2019 (14 pages)[,]" and "We find this evidence does not show a reasonable probability that it would change the outcome of the decision." [Tr. 2].

Plaintiff argues that the basis, in part, for the ALJ rejecting Dr. Parr's opinion from August 11, 2016, was that there was no evidence to suggest the opinion was meant to be permanent [Doc. 23 at 15 (citing Tr. 36)]. Plaintiff explains that the opinion letter from Dr. Burke is dated approximately three years after Dr. Parr's opinion and illustrates an overall worsening of Plaintiff's abilities. [*Id.*]. Plaintiff claims that Dr. Burke's opinion letter would have a reasonable probability of alleviating the ALJ's concerns regarding longevity of Plaintiff's limitations.

The Commissioner argues that the Appeals Council considered the additional evidence from Dr. Burke and found that it did not provide a basis for changing the ALJ's decision. [Doc. 27 at 20 (citing Tr. 1-6)]. The Commissioner argues that the ALJ would not have found it persuasive. The Commissioner concurs with Plaintiff that the evidence is "new" in that the ALJ did not have an opportunity to review it as part of his disability decision. [*Id.* at 21]. The Commissioner disagrees, however, with Plaintiff as to whether the material presented was "material."

The Court can remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the evidence is '"new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional

19

evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

When additional evidence is submitted to the Appeals Council, and the Appeals Council declines to review the ALJ's decision, the Sixth Circuit has held that the district court can remand for further consideration of the evidence only where Plaintiff shows that the evidence is material. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing 42 U.S.C. § 405(g); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). In order to prove that the evidence is material, Plaintiff bears the burden of establishing that it would likely change the ALJ's decision. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) and *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)); *see Foster*, 279 F.3d at 357.

20

The Court agrees with the parties that the letter from Dr. Burke constitutes "new" evidence because the ALJ did not have an opportunity to review it when making the disability decision. [Doc. 23 at 15; Doc. 27 at 21]. The Court further agrees with the Commissioner that Dr. Burke's opinion letter is not "material" because there is not a reasonable probability that the ALJ's decision would have been different if he had been able to consider it before making his decision. As the Commissioner points out, the ALJ had already considered Dr. Burke's treatment notes and determined that they did not support a reduction to light exertional activity. [Tr. 34-36]. Plaintiff is correct that part of the reason for the ALJ finding Dr. Parr's opinion to be less persuasive was that Plaintiff's knee pain was thought to be "transient," but that was not the ALJ's sole basis for making his evaluation. As mentioned previously, the ALJ relied heavily on consistency as a factor for making his decision, and the Court does not think the letter from Dr. Burke would go so far as to make all the medical opinions, including Dr. Parr's, consistent with he record and the ALJ's evaluation such that different disability decision would have resulted. The Commissioner also states that Dr. Burke's treatment notes do not reflect any complaints of knee pain and reflect that his back pain was "stable" on medication. [Doc. 27 at 22 (citing Tr. 274-39, 1013-41)]. Further, the ALJ determined that Plaintiff's back pain was not a severe impairment at step two, and the Plaintiff does not challenge that determination. [Tr. 31-32]. The Court agrees with the Commissioner that the new evidence submitted and reviewed by the Appeals Council is immaterial and thus does not support remanding this matter

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 22**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 26**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

ENTER:

_Bruce Guyton_
United States Magistrate Judge

22